**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

**WILLIAM OVERDEEP**

  **VS**                                          **18-cv-48**

**SELECT PORTFOLIO SERVICING, INC.,**
**WELLS FARGO BANK, NATIONAL ASSOCIATION**
**AS TRUSTEE FOR SABR 2004-OP1**
**MORTGAGE PASS THROUGH CERTIFICATES,**
**SERIES 2004-OP1, ALIAS**

### MEMORANDUM OF LAW IN SUPPORT MOTION FOR TEMPORARY RESTRAINING ORDER

This matter is before the Court on Plaintiff's Motion for a Temporary Restraining Order. Notice of this Motion has been provided to Attorney Michael Hagopian, whose firm is the foreclosing firm and Peter Carr, whose firm frequently represents Select Portfolio Servicing, Inc. Attorney Hagopian has indicated that he has not been retained and  Peter Carr has indicated by email at 12:18 pm today that he has not yet confirmed that his firm is engaged to appear in the matter and that he is not authorized to accept service of process.

   Plaintiff is a resident of State of Rhode Island with an address of1621 Old Smithfield Road, North Smithfield, Rhode Island. Plaintiff resides at  and owns said real estate located at 1621 Old Smithfield Road,

North Smithfield, Rhode Island along with his wife, Cindy Overdeep.

Plaintiffs executed a mortgage to Option One Mortgage Corporation on

November 19, 2003.  A copy is attached as Exhibit A.     Orlans PLLC is a

Michigan Limited Liability Company, which does business in Rhode Island

as a debt collector. Select Portfolio Servicing, Inc. ("SPS") is a foreign

corporation.   It is a loan servicer for the owner of Plaintiff's mortgage and

note.  It is a debt collector and it does not own Plaintiff's mortgage. At the

time it commenced servicing of the mortgage loan, Plaintiff's mortgage loan

account was delinquent.5.  Wells Fargo Bank National Association  as

Trustee for  SABR 2004-OP1 Mortgage Pass-Through Certificates, Series

2004-OP1 ("Wells Fargo")  claims to own Plaintiff's note and mortgage.

However this entity has never been assigned Plaintiff's mortgage or

transferred Plaintiff's note. This entity does not exist under that name.

There is a Trust with the name of Structured Asset Backed Receivables

Trust 2004-OP1 as described in its Pooling and Servicing Agreement, which

was filed at the Securities and Exchange Commission at the following web

hyperlink:

https://www.sec.gov/Archives/edgar/data/1283459/000105640405001

770/sab04op1_2004.txt

2

As indicated by Exhibit B, attached to this Affidavit,  Plaintiff's promissory note to Option Mortgage Corporation  was lost. This affidavit of lost note was mailed to Plaintiff's attorney by the previous loan servicer, Ocwen Loan Serviceing, LLC.  In this lost note affidavit, dated March 29, 2007 Option One Mortgage Corporation, the originator of the loan stated that Plaintiff's mortgage note had been lost. Plaintiff's attorney received this lost note affidavit from the previous loan servicer, Ocwen Loan Servicing, LLC in March 2015.

Wells Fargo has not been assigned the mortgage from Option One Mortgage  Corporation or any entity which owned the mortgage and the note. 10.    The   alleged assignment was from Sand Canyon Corporation to Wells Fargo Bank, N.A. as Trustee for SABR Trust 2004-OP1, Mortgage Pass-Through Certificates, Series 2004-OP1. It was dated April 18, 2012.  A copy is attached as Exhibit C.   This purported assignment of mortgage was void due to the fact that Option One did not own Plaintiff's mortgage on April 18, 2012.     On March 18, 2009, an affidavit was filed in the United States Bankruptcy Court for the Eastern District of Louisiana in case number 07-11862. A copy is attached as Exhibit D. This affidavit was signed by

Dale Sugimoto, President of Sand Canyon.  In this affidavit, dated March

18, 2009, Dale Sugimoto declared:


Accordingly, Sand Canyon is no longer engaged in the servicing of
residential mortgage loans . . .

Sand Canyon also does not own any residential real estate mortgages.

Sand Canyon's present business involves dealing with litigation claims,
including title issues or litigation relating to servicing prior to the sale of
OOMC's servicing rights to AHMC.


Thus on April 18, 2012, the date of the alleged assignment, neither Sand

Canyon nor Option One owned any mortgage loans.

                The Rhode Island Supreme Court in Dilibero v. MERS The

Rhode Island Supreme Court  held in the case of *Dilibero v MERS et al* 108

A. 3d 1013 (R.I., 2015) that a homeowner possessed standing to challenge

an assignment that was void, defective or invalid. The Court stated:

> This Court previously has had the opportunity to address whether a
> mortgagor has standing to challenge the validity of the assignment of
> his or her mortgage. *Mruk v. Mortgage Electronic Registration
> Systems, Inc., 82 A.3d 527, 534-36 (R.I.2013).* In *Mruk,* we held that
> "homeowners in Rhode Island have standing to challenge the
> assignment of mortgages on their homes to the extent necessary to
> contest the foreclosing entity's authority to foreclose." *Id.* at 536. We
> see no reason to veer from our holding in *Mruk* in this case.

> The Court concluded:

Thus, the subsequent assignment of the mortgage executed by MERS to UBS would be void *ab initio* because the assignor, MERS, had nothing to assign. *See Culhane v. Aurora Loan Services of Nebraska,* 708 F.3d 282, 291 (1st Cir.2013); 17A Am.Jur.2d. *Contracts* § 10 at 45-46 (2004) ("A void contract is void as to everybody whose rights would be affected by it if it were valid."). Based upon the facts as alleged in the complaint, it is our opinion that the plaintiff has adequately stated a claim upon which relief may be granted.

The concept of a void vs voidable assignment was discussed by the First Circuit in *Wilson v. HSBC Mortgage Services, Inc.* 744 F 3d1 (1st Cir., 2014), in which the First Circuit  had the standing to challenge an assignment as void because success on the merits would prove that the purported assignee is not, in fact the mortgagee. *Wilson* at p. 9. This Court in *Cosajay v. MERS et al* 980 F. Supp 2d 238, 240 (D.R.I., 2013)  cited *Culhane v. Aurora Loan Services of Nebrask*a, 708 F. 3d 282 (1st Cir., 2013) which stated:

The First Circuit in *Culhane* "further circumscribed" its holding, finding standing when a plaintiffs challenge was limited 244*244 to only "invalid, ineffective, or void" assignments, such as situations where "the assignor had nothing to assign or had no authority to make an assignment to a particular assignee." *Culhane,* 708 F.3d at 291.

Thus the allegations that Sand Canyon owned nothing to assign support the Plaintiff's position that title to the mortgage has not been assigned to Wells Fargo. Thus it lacks standing to foreclose.

The Rhode Island law regarding lost notes is codified at R.I.G.L 6A-3-309. It states:

> **§ 6A-3-309 Enforcement of lost, destroyed, or stolen instrument. –** (a) A person not in possession of an instrument is entitled to enforce the instrument if (i) **the person was in possession of the instrument and entitled to enforce it when loss of possession occurred,** (ii) **the loss of possession was not the result of a transfer by the person** or a lawful seizure, and (iii) the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process. (emphasis added).
>
> (b) A person seeking enforcement of an instrument under subsection (a) must prove the terms of the instrument and the person's right to enforce the instrument. If that proof is made, § 6A-3-308 applies to the case as if the person seeking enforcement had produced the instrument. The court may not enter judgment in favor of the person seeking enforcement unless it finds that the person required to pay the instrument is adequately protected against loss that might occur by reason of a claim by another person to enforce the instrument. Adequate protection may be provided by any reasonable means.

Thus in order to enforce the mortgage, by exercise of the statutory power of sale, Wells Fargo must demonstrate that the note was lost after they had possession of it when it was lost.

The case law relating to the lost note section of the UCC supports the position of the Defendants. In *Desmond v Green 523 B.R. 749 (1st Cir. B.A.P., 2014)*, the First Circuit BAP held that a mortgagee could not enforce a mortgage where the note had been lost prior to the transfer of the mortgage

6

to the mortgagee.  In Desmond, the Court applied Massachusetts law and

noted that " a mortgagee without a note lacks authority to foreclose on his

own behalf.".  It reviewed the holding of the Bankruptcy Court in which that

Court had held that the UCC 3-309 precluded the mortgagee from enforcing

a lost note, which had been lost by a party, which had purported to transfer

the note after it was lost. In Desmond, there had no been a foreclosure, but

instead there had been a sale of the property.  Thus the mortgagee, which

could not exercise the statutory power of sale due to the inability to proceed

under 3-309 or 3-301 by virtue of it not being  a holder, a non-holder in

possession, or one entitled to enforce a lost note under Mass. Gen. Laws ch.

106, § 3-309(a).

The case appealed in *Desmond* was the Massachusetts Bankruptcy

Court decision in *Desmond v. Green*, 505 B.R. 365 (Bank. D. MA, 2014). In

that case the facts were similar to this case. However in *Green*, the

Bankruptcy Trustee had ordered a sale of the property and the Court had to

determine the appropriate party which would be entitled to the proceeds.

The Court referenced the case of *Dennis Joslin Co., LLC v. Robinson Broad.

Corp.*, 977 F.Supp. 491 (D.D.C.1997), in which the Court concluded that,

under the plain language of the § 3-309 version applicable in that case

(identical to the current Rhode Island statute), only the person in possession

of a negotiable instrument at the time of loss is entitled to enforce that
instrument under § 3-309. According to the *Joslin* court, a person seeking to
enforce a lost note must meet two tests: "it must have been both *in
possession of the note when it was lost* and entitled to enforce the note when
it was lost." *Id.* at 495 (emphasis supplied). Accordingly, in *Joslin,* the court
held that, based on the plain language of the statute, the transferee of rights
under a note that was lost while in the possession of the transferor could not
recover under the note. Some statues have amended § 3-309 to reject
the *Joslin* holding. But Massachusetts never adopted that amended version
of § 3-309. Likewise, Rhode Island never adopted that version of the
Uniform Commercial Code and has the same version of the UCC as
Massachusetts.

In *Marks v. Braunstein,* 439 B.R. 248, 251 (D.Mass.2010), the District
Court for the District of Massachusetts applied the *Joslin* court's holding to
the Massachusetts version of § 3-309, holding that the party seeking to
enforce a note in that case did not meet the "prerequisites of § 3-309 because
he offered no proof that he was ever in possession of the
Note." *Id.* The *Marks* court, citing to *Joslin,* reiterated that "[a] party seeking
to enforce a note must show that, prior to the loss or destruction of the note,

he 1) was entitled to enforce the instrument and 2) had possession of the instrument." *Id. Marks* from p. 27.

In *Kemp v. Countrywide Home Loans, Inc. (In re Kemp),* 440 B.R. 624, 626 (Bankr.D.N.J. 2010) the Bankruptcy Court held that a lost note could only be enforced by the party which lost the note.  The Court held that the alleged mortgagee could not enforce the note, which had been lost and had never been held by the alleged mortgagee:

> The defendant presented a lost note certification to this court, but the factual predicate of the certificate conflicted with other facts presented on this record, and we have determined to disregard the certificate.[15] Section 12A:3-418, concerning payment or acceptance by mistake, does not apply here.

The court rejected the enforcement of a note where the assignee of the note and accompanying mortgage did not have possession of the note. In *Marks v. Braunstein,* 439 B.R. 248 (D.Mass.2010) , the assignee of the note and mortgage purchased the collateral for the note, a commercial building, from the Chapter 7 trustee, filed a secured proof of claim, and sought to enforce the note and mortgage against the proceeds from the sale. When the matter first came on to be heard, the claimant confirmed that he was not in possession of the note and was unaware of who was in possession of it.  Because the claimant acknowledged that he was never in possession of

the note, he was precluded from reliance on Section 3-309A of the Massachusetts UCC, which permits enforcement of a lost, destroyed or stolen instrument, but requires possession of the instrument at some point. Citing to *Premier Capital, LLC v. Gavin,* 319 B.R. 27, 33 (1st Cir. BAP 2004), the *Marks* court reflected that "[t]he purpose of the possession requirement in Article 3 is to protect the Debtor from multiple enforcement claims to the same note." *Id.* at 251. Acknowledging that conflicting enforcement claims were not a concern in the case before it, the court nevertheless applied the statutory requirements to hold that the note could not be enforced by the claimant to collect proceeds otherwise due to the claimant from the sale of the collateral on account of his secured claim.

A very recent Federal case indicates the manner in which Courts review statutes such as R.I.G.L. 6A-3-309. In *Deutsche Bank National Trust v. James Moynihan* CA No. 15-14155 (D.MA., September 19, 2017), the Court analyzed the Massachusetts version of UCC 3-309, which is identical to the Rhode Island statute. The Court granted Summary Judgment to the Plaintiff trust, which presented evidence that the note had been in the possession of Deutsche Bank on a particular date. Then pursuant to UCC 3-309, it had been lost by a law firm doing a foreclosure while it was a bailee for Deutsche Bank. The Court reviewed the lost note affidavit and found

10

that the note had been in the possession of the party seeking to foreclose

based on circumstantial evidence relating to the sale of the note from the

originator to the sponsor of the trust to the depositor of the trust and then to

Deutsche Bank, pursuant to a Pooling and Servicing Agreement.

In the present case, the note was endorsed in blank and not payable to an identified entity. The PSA agreement between Morgan Stanley and DBNTC stated that Morgan Stanley "has delivered or caused to be delivered to the Custodian [DBNTC]" the original blank endorsed note, "evidencing a complete chain of assignment." (Docket Entry # 65-10, pp. 74-75). Further, as evidenced by the note possession history, DBNTC had possession of the original note as of May 12, 2006 or, as evidenced by the PSA and Mortgage Loan Schedule, no later than September 29, 2006.[11] (Docket Entry # 65-17). DBNTC therefore had possession of the note no later than September 29, 2006. Indeed, the note possession history reflects that DBNTC "received the collateral file *including the original note*" on May 12, 2006. (Docket Entry # 65-17) (emphasis added). *Moynihan* at p.

The only remedy for Wells Fargo is to file a Declaratory Judgment action as

in *Moynihan* to establish ownership of the lost note. Since it has not done

that then it lacks the right to exercise the statutory power of sale.

Orlans  PLLC, on behalf of  SPS and Wells Fargo has scheduled a

foreclosure sale for Plaintiff's home on February 7, 2018, a copy of  which

Notice of Sale  is attached as Exhibit E. Plaintiff and his wife have applied

for several loan modifications.  Plaintiff has been advised that this trust does

not provide any loan modifications.  However Plaintiff obtained documents

which indicate that this Trust has regularly provided loan modifications. On

January 26, 2015 Ocwen, the prior servicer advised Plaintiff that the Owner of your loan does not allow loan modifications. It also stated that:

> According to our records, Wells Fargo Bank Corporate Trust Services is the owner of your loan.        A copy of this letter is attached as Exhibit F.

Thus there is a question as to the owner of the loan.

Plaintiff resides at 1621 Old Smithfield Road, North Smithfield, Rhode Island with his wife and six special needs foster children. He has  a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed. The lack of an assignment of the mortgage to Wells Fargo, the lost note and the inability of Wells Fargo or SPS to accelerate the mortgage due to the lost note  and the purported ownership of this loan by Wewlls Fargo Bank Corporate Trust Services renders void any attempt to commence the alleged foreclosure by Statutory Power of Sale. This demonstrates that Plaintiff has a substantial likelihood of success.

All the criterial for injunctive relief have been met. No objection has been made to this Motion. Attorney Hagopian has indicated that he has not been retained and that he could not accept service by email today and Attorney Carr indicated by email yesterday that he normally was not

retained on this matter. He also noted that he is currently not authorized to accept service of process. Notice has been given and there has been no response.

For these reasons the Motion for a Temporary Restraining Order should be granted.

WILLIAM OVERDEEP
By his Attorney

February 2, 2018

/s/ John B. Ennis
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, Rhode Island 02920
(401) 943-9230
Jbelaw75@gmail.com